JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| St. Philip the Apostle Roman Catholic Church and St. Philip the Apostle Parish Charitable Trust, | ANSPACH, JR., ROBERT J. t/d/b/a ANSPACH MEDIA, and ANSPACH, KIMBERLY |

**(b)** County of Residence of First Listed Plaintiff   Lancaster
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Lancaster
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey D. Bukowski, Esquire, Stevens & Lee, 111 N. Sixth Street, P O Box 679, Reading PA  19603  610-478-2215

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | |    28 USC 157 |    3729(a)) |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |    Slander     Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |    Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|    Student Loans | ☐ 340 Marine     Injury Product | |     New Drug Application | ☐ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ☐ 345 Marine Product     Liability | | ☒ 840 Trademark |    Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |    Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending |    Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract |    Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) |    Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage |    Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| |    Medical Malpractice |    Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |    Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee |    Income Security Act |    or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party |    Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | |    26 USC 7609 |    Agency Decision |
| ☐ 245 Tort Product Liability |    Accommodations   ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | |    State Statutes |
| |    Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other   ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |   ☐ 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 43(a) of the federal Lanham Act, 15 U.S.C. § 1125(a) & 18 U.S.C. § 1030
Brief description of cause:
claims for unfair competition and unauthorized access to protected computers

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ Preliminary & permanent Injunctive relief

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
04/26/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JFL

5:19cv 1865

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **2111 Millersville Pike, Lancaster, PA 17603**

Address of Defendant: **62 West Elm Street, Conestoga, PA 17516**

Place of Accident, Incident or Transaction: **Social Media**

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | Yes | No |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not   related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **4/26/2019**   _____   **76102**
_(Attorney-at-Law / Pro Se Plaintiff)_   _(Attorney I.D. # (if applicable))_

---

**CIVIL:** (Place a √ in one category only)

**A.   Federal Question Cases:**

- ☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2.  FELA
- ☐ 3.  Jones Act-Personal Injury
- ☐ 4.  Antitrust
- ☐ 5.  Patent
- ☐ 6.  Labor-Management Relations
- ☐ 7.  Civil Rights
- ☐ 8.  Habeas Corpus
- ☐ 9.  Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* **Computer fraud and abuse**

**B.   Diversity Jurisdiction Cases:**

- ☐ 1.  Insurance Contract and Other Contracts
- ☐ 2.  Airplane Personal Injury
- ☐ 3.  Assault, Defamation
- ☐ 4.  Marine Personal Injury
- ☐ 5.  Motor Vehicle Personal Injury
- ☐ 6.  Other Personal Injury *(Please specify):* _____
- ☐ 7.  Products Liability
- ☐ 8.  Products Liability – Asbestos
- ☐ 9.  All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Jeffrey D. Bukowski** , counsel of record or pro se plaintiff, do hereby certify:

- ☐  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑  Relief other than monetary damages is sought.

DATE: **04/26/2019**   _____   **76102**
_(Attorney-at-Law / Pro Se Plaintiff)_   _(Attorney I.D. # (if applicable))_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (10/2018)

APR 29 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ST. PHILIP THE APOSTLE ROMAN CATHOLIC CHURCH, a parish of the Roman Catholic Diocese of Harrisburg, PA and ST. PHILIP THE APOSTLE PARISH CHARITABLE TRUST, by and through the Pastor of St. Philip the Apostle, as Trust Administrator | : : : : : : : | CIVIL ACTION<br><br>NO. |
| v. | : | |
| ROBERT J. ANSPACH, JR. t/d/b/a ANSPACH MEDIA, and KIMBERLY ANSPACH | : : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( x )

---

| 4/26/2019 | _[signature]_ | Plaintiff |
|---|---|---|
| Date | Attorney-At-Law | Attorney for |

| 610-478-2215 | 610-988-0805 | jdb@stevenslee.com |
|---|---|---|
| Telephone | FAX Number | E-mail Address |

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ST. PHILIP THE APOSTLE ROMAN CATHOLIC CHURCH, a parish of the Roman Catholic Diocese of Harrisburg, PA and ST. PHILIP THE APOSTLE PARISH CHARITABLE TRUST, by and through the Pastor of St. Philip the Apostle, as Trust Administrator, | Civil Action No.: |
| Plaintiffs, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| ROBERT J. ANSPACH, JR. t/d/b/a ANSPACH MEDIA, and KIMBERLY ANSPACH, | |
| Defendants. | |

## COMPLAINT

Plaintiffs St. Philip the Apostle Roman Catholic Church (hereinafter, "St. Philip Parish" or "Parish") and St. Philip the Apostle Parish Charitable Trust, by and through the Pastor of St. Philip Parish, as Trust Administrator (hereinafter, "St. Philip Parish Trust" or "Trust") (St. Philip Parish and St. Philip Parish Trust shall be collectively referred to as "Plaintiffs") assert legal claims against defendants Robert J. Anspach, Jr., trading and doing business as Anspach Media, and his wife Kimberly Anspach (collectively, the "Anspachs") as follows:

### PARTIES

1.     Plaintiff St. Philip Parish was formed by the Bishop of the Roman Catholic Diocese of Harrisburg (the "Bishop") as a parish within the Catholic Diocese of Harrisburg on

May 11, 1965, the Feast Day of St. Philip the Apostle, in accordance with the canon law of the Roman Catholic Church.

2.      St. Philip Parish's first Mass was offered on Sunday, May 30, 1965, and St. Philip Parish has been serving Mass and attending to the needs of its parishioners ever since.

3.      St. Philip Parish has its principal offices in Lancaster County, Pennsylvania, at 2111 Millersville Pike, Lancaster, PA 17603.

4.      St. Philip Parish Trust was created by the Bishop as a charitable trust to be administered for the exclusive benefit of St. Philip Parish in accordance with the laws of the Commonwealth of Pennsylvania and the canon law of the Roman Catholic Church.

5.      St. Philip Parish Trust assets include the real property on which the St. Philip Parish church is located, all of the buildings and improvement thereon, and all personal and other property used by or held in the name of St. Philip Parish, including every item of tangible and intangible personal property of St. Philip Parish.

6.      The Bishop is the Trustee of the St. Philip Parish Trust.  The Bishop appointed the Pastor of St. Philip Parish, by virtue of his office as pastor, as the Trust Administrator (or civil law administrator) of the St. Philip Parish Trust, with the responsibility and legal authority to act on behalf of and manage the operations and affairs of St. Philip Parish and use assets of the St. Philip Parish Trust for such purposes, including, without limitation, to employ and dismiss employees and agents of the Parish, execute agreements, contracts and service agreements for the purpose of purchasing specific services, and to use St. Philip Parish Trust assets for those purposes.

2

7.     St. Philip Parish Trust has its principal offices in Lancaster County, Pennsylvania, at 2111 Millersville Pike, Lancaster, PA 17603.

8.     Robert J. Anspach, Jr. ("Mr. Anspach") is a citizen of the Commonwealth of Pennsylvania, with a residence in Lancaster County, Pennsylvania, at 62 West Elm Street, Conestoga, PA 17516.

9.     Mr. Anspach trades and does business under the fictitious business name of Anspach Media, through which he sells, among other things, website design, search engine optimization, and other internet and social media marketing and consulting services.

10.     Kimberly Anspach ("Mrs. Anspach") is a citizen of the Commonwealth of Pennsylvania, with a residence in Lancaster County, Pennsylvania, at 62 W. Elm Street, Conestoga, PA 17516.

11.     Until recently, Mrs. Anspach was employed by St. Philip Parish to provide administrative and clerical services.

### JURISDICTION AND VENUE

12.     This is a civil action asserting claims for unfair competition in violation of Section 43(a) of the federal Lanham Act, 15 U.S.C. § 1125(a), unauthorized access to protected computers in violation of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, a claim for declaratory judgment under 28 U.S.C. § 2201, and claims under state law.

13.     This Court has original jurisdiction over this civil action under 28 U.S.C. §§ 1331 and 1338 because it arises under the Constitution, laws, or treaties of the United States, including Acts of Congress relating to trademarks.

SL1 1575617v2 113245.00001

14.    This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims are so related to Plaintiffs' federal law claims that they form part of the same case and controversy under Article III of the United States Constitution.

15.    This Court has jurisdiction over Plaintiffs' claim for declaratory relief under 28 U.S.C. § 2201 because there is an actual controversy between Plaintiffs and Defendants as alleged herein within its jurisdiction.

16.    This Court is the proper venue for this action under 28 U.S.C. §§ 118(a) and 1391(b) because (1) both defendants reside in this judicial district, (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district, and (3) both defendants are subject to this Court's personal jurisdiction.

## FACTS COMMON TO ALL COUNTS

### ST. PHILIP PARISH'S ADOPTION AND USE OF TRADEMARK AND CREATION OF WEBSITE

17.    Since at least as early as 2003, St. Philip Parish has utilized the trade and/or service name and mark "ST. PHILIP MILLERSVILLE."

18.    Since the Parish first began using the name and mark "ST. PHILIP MILLERSVILLE," the Parish has become well known to its parishioners and the community under the name and mark "ST. PHILIP MILLERSVILLE."

19.    In the summer of 2003, St. Philip Parish established a website at the URL www.stphilipmillersville.org, which website became an asset of the St. Philip Parish Trust.

20.    St. Philip Parish also established a Facebook page, with a link to St. Philip Parish's www.stphilipmillersville.org website.

4

<u>UPGRADE OF ST. PHILIP PARISH'S WEBSITE</u>

21.     In 2017, St. Philip Parish retained Mr. Anspach, trading and doing business as Anspach Media, to redesign and optimize the www.stphilipmillersville.org website, host the website, and provide social media and information technology ("IT") and related services.

22.     At the time Mr. Anspach was serving as a volunteer member of St. Philip Parish's finance committee.  (In 2018, Mr. Anspach also joined the Parish's buildings & grounds committee.)

23.     Rather than update and work with the existing St. Philip Parish website, www.stphilipmillersville.org, Mr. Anspach largely copied the content of that website and moved it intact to a newer, search engine optimized website that Mr. Anspach had designed and hosted for St. Philip Parish, at the URL www.stphilipmillersville.com.

24.     Mr. Anspach's services in redesigning the St. Philip Parish website were performed as a work for hire, and the new website, www.stphilipmillersville.com has been and is registered in the name of Susan Havey (the Parish manager at the time) for the benefit of the Parish and, as such, is property of the Parish and Trust.

25.     At the same time, Mr. Anspach integrated the revised St. Philip Parish website, www.stphilipmillersville.com, into the Parish's Facebook account, and established for the benefit of the Parish other social media accounts, including Twitter, Instagram, Pinterest, and YouTube. All of these social media accounts are the property of the Parish and Trust.

26.     The St. Philip Parish website www.stphilipmillersville.com was completed and went live on or about February 20, 2018.

5

SL1 1575617v2 113245.00001

27.     For Mr. Anspach's efforts in redesigning the website, hosting the website, and providing social media and IT and related services, St. Philip Parish and St. Philip Parish Trust paid Mr. Anspach approximately $5,000.00.

28.     For additional compensation, Mr. Anspach also designed a wall-mounted TV and audiovisual display, in the St. Philip Parish church lobby, including a Screen Cloud program to remotely operate it and integrate it into the St. Philip Parish's website and social media accounts. The wall-mounted TV, audiovisual display, and Screen Cloud program are the property of the Parish and Trust.

29.     From February 2018 until January 2019, Mr. Anspach provided ongoing website hosting, social media, IT and related consulting services to the Parish on an agreed upon basis.

### BILLING DISPUTE BETWEEN MR. ANSPACH AND ST. PHILIP PARISH

30.     On January 4, 2019, after receiving Mr. Anspach's invoice dated January 3, 2019, St. Philip Parish manager Greg Sahd sent an email to Mr. Anspach, requesting Mr. Anspach to provide a signed copy of Mr. Anspach's contract with St. Philip Parish for managing the St. Philip Church's website.

31.     Mr. Anspach responded to Greg Sahd's email by explaining how he came to be managing the St. Philip Parish website and related social media, but failed to provide a signed contract binding St. Philip Parish or St. Philip Parish Trust to retaining Mr. Anspach or Anspach Media for such website and related social media services.

32.     Mr. Anspach provided a different, more detailed but still unsigned and unexecuted contract.

6

33.     On January 17, 2019, after much prayerful thought, St. Philip Parish's Pastor, Father Lawrence Sherdel, sent a letter to Mr. Anspach removing him from the St. Philip Parish finance and buildings & grounds committees, and terminating Mr. Anspach and Anspach Media's management of the St. Philip Parish website, web hosting, IT and social media related services.

### THE ANSPACHS' UNLAWFUL RETALIATION

34.     Shortly after receiving Father Sherdel's termination letter, on January 19 or 20, 2019, the Anspachs shut down the St. Philip Parish website, www.stphilipmillersville.com, in essence misappropriating it to themselves without the permission of the Parish or Trust and without any legal right or justification.

35.     St. Philip Parish engaged another parishioner, Ryan McFadden, to construct, as quickly as possible, another St. Philip Parish website, www.stphilipmillersville.net, which he registered for the benefit of St. Philip Parish and, as such, is the property of the Parish and Trust.

36.     After Mr. Anspach was terminated as the website manager/web master, when they realized St. Philip Parish had established a new website, www.stphilipmillersville.net, the Anspachs accessed and resurrected the Parish's www.stphilipmillersville.com website without authorization from the Parish or Trust, and since then have continued to post new website content on Parish activities, events and other information, thereby preventing the Parish from operating or controlling the content of its own bought-and-paid-for website and causing confusion among parishioners and members of the community between the www.stphilipmillersville.net  and www.stphilipmillersville.com websites.

7

37.      On January 23, 2019, six days after Mr. Anspach was terminated as the Parish's website manager/web master and, ostensibly to prevent the Parish from registering the www.stphilipmillersville.com website domain, Mrs. Anspach fraudulently used the Parish's credit card to pay $36.34 to GoDaddy.Com to register the www.stphilipmillersville.com  website domain for an additional period of two years.

38.      Mrs. Anspach made this credit card purchase from her home or somewhere other than Parish property, since the date of the purchase, January 23, 2019, was a day she did not work for the Parish.

39.      Plaintiffs believe the Anspachs took this action solely for the purpose of keeping the www.stphilipmillersville.com website under the Anspachs' control and preventing St. Philip Parish from being able to access the website or modify its contents.

40.      When Father Sherdel and Parish manager Greg Sahd met with Mrs. Anspach to confront her about the unauthorized use of the Parish's credit card, Mrs. Anspach immediately quit her employment by the Parish.

41.      On Sunday, February 3, 2019, St. Philip Parish received an email from the Parish's new website host, Blue Host, stating it had received a communication from Mr. Anspach's attorney alleging the Parish was committing copyright infringement by posting copyrighted material belonging to Mr. Anspach on the Parish's new website, www.stphililpmillersville.net.

42.      On Monday, February 4, 2019, Ryan McFadden sent emails to Harrisburg Diocese officials requesting assistance to prevent the Parish's new website from being taken offline by a

8

mere allegation that Mr. Anspach—and not St. Philip Parish—owned the copyright to the content

on the Parish's www.stphilipmillersville.com website.

43.     On Tuesday, February 5, 2019, Mr. McFadden responded to legal@bluehost.com

that the allegedly infringing material about which Mr. Anspach had complained had been

removed.

44.     As far as Plaintiffs are aware, Mr. Anspach did not register any of his allegedly

copyrighted materials from the www.stphilipmillersville.com website with the United States

Copyright Office.

45.     Moreover, the material on the www.stphilipmillersville.com website was

substantially identical in form to the content of the Parish's prior www.stphilipmillersville.org

website, which was created by former Parish manager Susan Havey and others as a work for hire

for the benefit of and registered under the name of the Parish.

46.     Therefore, none of the www.stphilipmillersville.com website content or

www.stphilipmillersville.net content is the original work of Mr. Anspach, and he possesses no

copyright in any such content.

47.     Notwithstanding the removal of the allegedly copyrighted material from the

Parish's new www.stphilipmillersville.net website, Blue Host deactivated

www.stphilipmillersville.net based on Mr. Anspach's false allegations of copyright infringement.

48.     On February 6, 2019, Harrisburg Diocese solicitor Terrence J. Kerwin, Esquire

sent by email a letter, dated February 5, 2019, to Mr. Anspach's attorney Angela V. Langlotz,

Esquire, advising her that St. Philip Parish had removed "any material that would be considered

9

infringing on copyrighted materials" from its prior www.stphilipmillersville.com website, and formally requested that this website be removed "along with any of its cross channels or links."

49.     Attorney Kerwin also informed Attorney Langlotz that the Anspachs did not and does not have the Parish's "permission to use any pictures or references to the Church or its employees or agents" on the www.stphilipmillersville.com website.

50.     On February 7, 2019, Father Sherdel sent letters by email and U.S. mail to Amazon.Com and to GoDaddy.Com demanding that each immediately shut down the unauthorized use of St. Philip Parish's website at www.stphilipmillersville.com.

51.     On February 8, 2019 and February 26, 2019, GoDaddy.com and Amazon Web Services sent responses to Father Sherdel's February 7, 2019 letters denying Father Sherdel's requests.

52.     Ever since St. Philip Parish terminated the services of Mr. Anspach on January 17, 2019, the Anspachs, working in concert with one another, and without authorization from the Parish or Trust, have continued to gain unauthorized access to and exercise dominion and control over the Parish's www.stphilipmillersville.com website and associated social media accounts.

53.     The Anspachs control access to and exercise dominion and control over the Parish's www.stphilipmillersville.com website by gaining unauthorized access through the Internet to the website host company's server or servers—which are computers connected to the Internet and used in interstate commerce—and updating the website contents on the servers.

54.     The Anspachs control access to and exercise dominion and control over each of the Parish's social media accounts by gaining unauthorized access through the Internet to each

10

social media platform company's servers—which are computers connected to the Internet and used in interstate commerce—and posting materials and making other changes to the social media contents on those servers.

55.     Despite requests from St. Philip Parish, the Anspachs have refused to cease their unauthorized access to and dominion and control over the Parish's www.stphilipmillersville.com website and associated social media accounts, and have refused to return access to and control over the Parish's website and social media accounts to Parish representatives, including Parish manager Greg Sahd.

56.     Although the Anspachs are keeping information on the Parish's www.stphilipmillersville.com website and social media platform accounts relatively updated with new content, they could stop doing so at any time, or at a moment's notice they could post false, misleading, derogatory, or other harmful information and content on the Parish's website and social media platform accounts.

57.     In addition, by controlling access to and exercising dominion and control over the Parish's www.stphilipmillersville.com website, the Anspachs also control access to and exercise dominion and control over the portion of the Parish's website containing the Parish's online payment portal, through which parishioners and members of the community make online donations and purchase materials.

58.     Thus, by virtue of their unauthorized control over the Parish's www.stphilipmillersville.com website, the Anspachs have the ability, at a moment's notice, to

turn off online contributions or purchases intended for the Parish and, upon information and belief, possibly divert where any payments are directed.

59.     Mr. Anspach has refused to retract his false statements to Blue Host regarding the alleged copyright infringement as a result of posting materials on the newer Parish www.stphilipmillersville.net website.

60.     Instead, Mr. Anspach has repeatedly threatened to retain control over the Parish website and social media platforms until St. Philip Parish fires Parish manager Greg Sahd.

61.     Mr. Anspach has said he will "fight until the bitter end" any attempt by the Parish to regain control over its website and social media accounts, and that "it's going to cost St. Philip's money."

62.     Mr. Anspach has expressed a willingness to relinquish control of the Parish's website and social media platform accounts only to the Diocese of Harrisburg's IT Department, but not to representatives of St. Philip Parish.

## <u>COUNT ONE</u>
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)(1)(A)

63.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 62, inclusive, as though fully set forth herein.

64.     Plaintiffs are the owners of the common law trade name and/or service mark "ST. PHILIP MILLERSVILLE," which it has used in interstate commerce since at least as early as 2003.

12

65.     The ST. PHILIP MILLERSVILLE" name and mark are distinctive and have acquired secondary meaning such that the mark has become associated with the distinctive religious, social and community services provided by St. Philip Parish to its parishioners, members of the community, and others.

66.     Because it is distinctive and/or has acquired secondary meaning, Plaintiffs' "ST. PHILIP MILLERSVILLE" mark is valid and entitled to legal protection.

67.     Defendants' unauthorized and unlicensed use of the "ST. PHILIP MILLERSVILLE" name and mark, through their control over, operation and content of the website www.stphilipmillersville.com and various social media platform accounts, and the words, "Built, Hosted and Maintained by Anspach Media for the Diocese of Harrisburg" on the website www.stphilipmillersville.com is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Plaintiffs.

68.     As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiffs have suffered irreparable harm and other damages, and unless Defendants' actions are enjoined by this Court, will continue to suffer, irreparable harm and other damages.

SL1 1575617v2 113245.00001

## COUNT TWO

### VIOLATION OF COMPUTER FRAUD AND
### ABUSE ACT, 18 U.S.C. § 1030(A)(5)

69.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 68, inclusive, as though fully set forth herein.

70.     Under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g), any person who suffers damages or loss by reason of a violation of the CFAA may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

71.     Based on their conduct as alleged herein, Defendants have intentionally accessed one or more protected computers without authorization, and as a result of such conduct, recklessly caused damage within the meaning of the CFAA, 18 U.S.C. § 1030(a)(5)(B).

72.     In addition, based on their conduct alleged herein, Defendants have intentionally accessed one or more protected computers without authorization, and as a result of such conduct, caused damage and loss within the meaning of the CFAA, 18 U.S.C. § 1030(a)(5)(C).

73.     Plaintiffs' aggregate losses from Defendants' actions in violation of the CFAA exceed $5,000.

74.     Therefore, in addition to being subject to criminal liability, Defendants are civilly liable to Plaintiffs for their violations of the CFAA as alleged herein.

14

## COUNT THREE
### UNFAIR COMPETITION UNDER PA COMMON LAW

75.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 74, inclusive, as though fully set forth herein.

76.    A claim for unfair competition under Pennsylvania law based on false designation of origin is co-extensive with liability for unfair competition under Section 43(a) of the federal Lanham Act, 15 U.S.C. § 1125(a).

77.    Based on the same conduct alleged above that constitutes a violation of the Lanham Act, Defendants are liable to Plaintiffs for unfair competition under Pennsylvania law.

78.    As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiffs have suffered irreparable harm and other damages, and unless Defendants' actions are enjoined by this Court, will continue to suffer, irreparable harm and other damages.

## COUNT FOUR
### CONVERSION

79.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 78, inclusive, as though fully set forth herein.

80.    Based on their conduct alleged herein, Defendants have, without lawful justification, deprived Plaintiffs of their right of property in, or use or possession of Plaintiffs' websites, www.stphilipmillersville.org, www.stphilipmillersville.com and www.stphilipmillersville.net, and social media accounts, including the computer servers from which the above websites and social media accounts are accessed and controlled, and to

15

Plaintiffs' online payment portal associated with the websites (and possibly funds paid through the online payment portal).

81.     Defendants' deprivation of Plaintiffs' property rights, as alleged herein, has been so severe and of such a long duration that Defendants are liable to Plaintiffs for conversion.

82.     Defendants' deprivation of Plaintiffs' property rights, as alleged herein, was willful and with deliberate intent to harm Plaintiffs, or with reckless indifference to the harm Defendants would cause Plaintiffs.

<u>**COUNT FIVE**</u>
**CIVIL CONSPIRACY**

83.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 82, inclusive, as though fully set forth herein.

84.     Based on their conduct alleged herein, Defendants have conspired with each other to do unlawful acts, or to do lawful acts by unlawful means or for unlawful purposes.

85.     Defendants have performed overt acts in pursuance of their common purpose.

86.     For example, as alleged above, both Defendants violated the CFAA by, among other things, intentionally accessing without authorization one or more protected computers— including, without limitation, computer servers for the company that hosts Plaintiffs' website www.stphilipmillersville.com—and as a result of such conduct, caused damage and loss within the meaning of the CFAA.

87.     In addition, Mrs. Anspach used Plaintiffs' credit card without authorization to pay GoDaddy.com for a two-year domain name registration fee.

SL1 1575617v2 113245.00001

88.     These actions were taken in furtherance of Defendants' plot to prevent Plaintiffs from being able to access or control their website, www.stphilipmillersville.com and social media accounts.

89.     Defendants' actions, as alleged herein, were willful and with deliberate intent to harm Plaintiffs, or with reckless indifference to the harm Defendants would cause Plaintiffs.

## COUNT SIX
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

90.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 89, inclusive, as though fully set forth herein.

91.     Plaintiffs had a contractual relationship with Blue Host, a web hosting company that hosts Plaintiffs' website, www.stphilipmillersville.net.

92.     Defendants purposefully communicated with Blue Host and falsely claimed that Plaintiffs' website www.stphilipmillersville.net contained content that violated copyright laws in an intentional effort to convince Blue Host to suspend Plaintiffs' website.

93.     Defendants' communications were successful, and Blue Host suspended Plaintiffs' website www.stphilipmillersville.net based on Defendants' false copyright claim.

94.     Defendants' actions were not privileged or justified.

95.     Actual legal damage has resulted from Defendants' actions.

96.     Defendants' actions, as alleged herein, were willful and with deliberate intent to harm Plaintiffs, or with reckless indifference to the harm Defendants would cause Plaintiffs.

SL1 1575617v2 113245.00001

**COUNT SEVEN**

**UNJUST ENRICHMENT**

97.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in

paragraphs 1 through 96, inclusive, as though fully set forth herein.

98.     By engaging in the aforementioned conduct, including, without limitation,

obtaining unauthorized access to and exercising control and dominion—to the exclusion of

Plaintiffs— over the www.stphilipmillersville.com website for which Plaintiffs bought and paid,

Defendants have been and will continue to be unjustly enriched.

99.     Under the facts and circumstances described above, Defendants should not be

permitted to retain the benefits of their unjust enrichment at the expense of Plaintiffs.

**COUNT EIGHT**

**DECLARATORY RELIEF**

100.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in

paragraphs 1 through 99, inclusive, as though fully set forth herein.

101.     There is a substantial and continuing controversy between Plaintiffs and

Defendants, and a declaration of rights is both necessary and appropriate to establish that

Plaintiffs are the rightful owners of the website www.stphilipmillersville.com and all social

media platform accounts and other accounts purporting to represent St. Philip Parish and, as

such, access and control over them must be relinquished to Defendants.

102.     There also is a substantial and continuing controversy between Plaintiffs and

Defendants, and a declaration of rights is both necessary and appropriate to establish that

18

Defendants are not entitled to assert any copyright in the contents of Plaintiffs' website and social media accounts.

103.    If this Court does not declare the rights of the parties, and Defendants continue to assert ownership and control over Plaintiffs' website and social media accounts, and assert any copyright in the contents of Plaintiffs' website and social media accounts, Defendants will continue to interfere with Plaintiffs' business and communications to the parishioners of St. Philip Parish and members of the community.

104.    Accordingly, Plaintiffs are entitled to an order from this Court: (a) declaring Plaintiffs are the rightful legal and equitable owners of their bought-and-paid-for www.stphilipmillersville.com website and associated social media accounts; (2) enjoining Defendants from asserting ownership or control over Plaintiffs' website or social media accounts, or any right, title or interest, including under the Copyright Act, in the contents of Plaintiffs' website and social media accounts; and (3) enjoining Defendants from engaging in any acts that interfere with Plaintiffs' access to, operation of, or control over their www.stphilipmillersville.com or www.stphilipmillersville.net or www.stphilipmillersville.org websites and associated social media accounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

A.    Entry of judgment in favor of Plaintiffs and against Defendants, and awarding Plaintiffs damages, including compensatory, special, exemplary, punitive, statutory and enhanced damages (as appropriate to each cause of action); and

19

SL1 1575617v2 113245.00001

B.      Entry of a preliminary and permanent injunction restraining Defendants, together with their employees, agents, successors and assigns, and all others acting in concert with them, from using the trademark "ST. PHILIP MILLERSVILLE" or any other trademark likely to cause confusion with Plaintiffs' trademark; and

C.      Entry of an Order requiring the Defendants to account to Plaintiffs for their profits, if any, resulting from their unlawful conduct; and

D.      Entry of an Order declaring that Plaintiffs are the legal and equitable owners of their bought-and-paid-for www.stphilipmillersville.com website and associated social media accounts.

E.      Entry of an Order directing Defendants to relinquish to Plaintiffs access and control of Plaintiffs' website www.stphilipmillersville.com and associated social media accounts, as well as other website domains or social media accounts that Defendants control that are likely to create confusion with Plaintiffs' mark and domain name; and

F.      Entry of an Order declaring that Defendants have no valid claim of right, title, or interest, including under the Copyright Act, to any content on the www.stphilipmillersville.com website, which is property of Plaintiffs for which they bought and paid; and

G.      Entry of an Order preliminarily and permanently enjoining Defendants from engaging in any actions that interfere with Plaintiffs' access to and exercise of dominion or control over Plaintiffs' www.stphilipmillersville.com, www.stphilipmillersville.net, or www.stphilipmillersville.org websites or associated social media accounts; and

F.      Entry of an award of attorneys' fees and costs to Plaintiffs (as appropriate); and

20

G.      Entry of an award to Plaintiffs such other relief as the Court deems just and

equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues triable to a jury.


Dated: April 26, 2019                     **STEVENS & LEE, P.C.**

                                          By:  s/Jeffrey D. Bukowski
                                               Jeffrey D. Bukowski
                                               PA Attorney ID 76102
                                               111 N. Sixth Street
                                               Reading, PA 19603-0679
                                               (610) 478-2215
                                               jdb@stevenslee.com

                                          *Attorneys for Plaintiffs St. Philip the Apostle Roman*
                                          *Catholic Church and St. Philip Parish Trust*

21